FILED

JAN 14 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 19 CR 27 |
| | ) | |
| v. | ) | Violations: Title 15, United States |
| | ) | Code, Sections 78j(b) and 78ff; and |
| ANDREW J. KANDALEPAS | ) | Title 17, Code of Federal |
| | ) | Regulations, Section 240.10b-5 |

JUDGE FEINERMAN
MAGISTRATE JUDGE WEISMAN

The UNITED STATES ATTORNEY charges:

1. At times material to this information:

    a. Defendant ANDREW J. KANDALEPAS was a resident of Schaumburg, Illinois and the President, Chief Executive Officer, Chief Financial Officer, and Chairman of the Board for Wellness Center USA, Inc. ("WCUI").

    b. WCUI was a corporation formed under the laws of Nevada with its principal place of business in Hoffman Estates, Illinois. WCUI was an online nutritional vender that subsequently became the holding company for four subsidiaries.

    c. WCUI's common stock was publicly traded on the Over-the-Counter Bulletin Board (OTCBB), which is an electronic quotation system that displays real-time quotes, last-sale prices, and volume information for many securities that are not listed on a national securities exchange.

    d. Through the sale of common stock and warrants, WCUI raised more than $19 million from investors.

e. As a publicly traded company, WCUI filed periodic reports with the United States Securities and Exchange Commission ("SEC") disclosing information about the company's business and financial condition. These filings were important to investors and financial professionals looking for information when evaluating whether to buy or sell WCUI common stock or otherwise invest in the company.

f. In his capacity as, among other things, Chief Executive Officer, Chief Financial Officer, and Chairman of the Board of Directors, defendant KANDALEPAS signed and certified the accuracy of WCUI's SEC filings.

g. WCUI's filings included stock ownership information for defendant KANDALEPAS and other directors and officers, as well as individuals who owned at least 10% of WCUI's stock.

h. The WCUI bylaws required that compensation for any WCUI officer, including defendant KANDALEPAS, had to be approved by the WCUI Board of Directors.

2. Beginning no later than December 2012, and continuing until in or about November 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANDREW J. KANDALEPAS,

defendant herein, directly and indirectly, by the use of means and instrumentalities of interstate commerce, willfully used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, and

aided and abetted the use and employment of manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; and (b) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, which scheme is further described below.

3. It was part of the scheme that defendant KANDALEPAS took multiple steps to manipulate and artificially inflate the WCUI stock price and induce investors to direct more than $19 million to the company, including by issuing false press releases misrepresenting WCUI's business and sales, issuing WCUI shares at discounted prices to certain preferred WCUI shareholders and directing those shareholders to engage in market manipulation of the WCUI stock price, and using a secret trading account to engage in market manipulation of WCUI's stock price. Defendant KANDALEPAS also profited nearly $600,000 from the scheme through undisclosed trading in a secret brokerage account and misappropriating more than $457,000 from WCUI's bank account without the Board of Directors' knowledge or consent.

4. It was further part of the scheme that defendant KANDALEPAS knowingly induced victims to invest in WCUI by causing WCUI to issue false press releases. For example, on October 1, 2015, defendant KANDALEPAS caused WCUI to issue a press release touting sales of a medical device called the PL-1000, when defendant KANDALEPAS knew that the press release was false because WCUI and

its subsidiaries had never sold any PL-1000 medical devices and were at that time prohibited by the FDA from manufacturing or selling any PL-1000 medical devices.

5. It was further part of the scheme that defendant KANDALEPAS caused WCUI to issue more than 11 million shares of common stock to certain preferred WCUI shareholders at the discounted price of $0.001 per share and directed many of those shareholders to engage in market manipulation for the purpose of artificially inflating the WCUI stock price by, among other things:

    a. Directing the shareholders to "mark the close," which is a form of market manipulation that involves attempting to influence the closing price of a publicly traded security by executing purchase or sale orders at or near the close of normal trading hours;

    b. Directing the shareholders to engage in "matched trades," which are orders to buy or sell securities that are entered with knowledge that a matching order on the opposite side of the transaction has been or will be entered for the purpose of: (1) creating a false or misleading appearance of active trading in any publicly traded security; or (2) creating a false or misleading appearance with respect to the market for any such security; and

    c. Directing the shareholders to execute "wash sales," which are orders to buy or sell securities resulting in no change of beneficial ownership for the purpose of: (1) creating a false or misleading appearance of active trading in any publicly traded security; or (2) creating a false or misleading appearance with respect to the market for any such security.

6. It was further part of the scheme that defendant KANDALEPAS controlled a brokerage account held in Individual A's name and secretly used the account to trade WCUI stock and engage in market manipulation by, among other things, "marking the close," engaging in "matched trades," and executing "wash sales," all for the purpose of artificially inflating the WCUI stock price.

7. It was further part of the scheme that defendant KANDALEPAS lied to investors and materially misrepresented in SEC filings that he had never sold any WCUI stock. In reality, defendant KANDALEPAS secretly traded using a brokerage account held in Individual A's name and sold hundreds of thousands of shares of WCUI common stock for a profit of more than $136,000, which defendant KANDALEPAS used to pay his personal expenses.

8. It was further part of the scheme that defendant KANDALEPAS lied to investors and materially misrepresented in SEC filings that he had never received any compensation from WCUI. For example, several SEC filings signed by defendant KANDALEPAS misrepresented that, "Kandalepas has elected not to receive any compensation for his services, until the Company is financial capable to compensate him." In fact, defendant KANDALEPAS withdrew more than $457,000 from WCUI's bank accounts, without the knowledge or approval of the WCUI Board of Directors, and he used the funds to pay his personal expenses.

9. It was further part of the scheme that defendant KANDALEPAS took numerous steps to conceal his misappropriation of WCUI funds from investors and the SEC. For example, to mask his unauthorized withdrawal of the $457,000 from

the WCUI bank accounts, on or about January 14, 2014, KANDALEPAS executed a promissory note for a $250,000 "loan" from WCUI. Defendant KANDALEPAS backdated the promissory note to September 30, 2013, the last day of WCUI's fiscal year. Defendant KANDALEPAS also signed and approved WCUI's filing of a false SEC Form 10-K that stated, "[o]n September 30, 2013, Mr. Kandalepas borrowed $250,000 from the company pursuant to a promissory note," when in fact he knew he had signed the promissory note on January 14, 2014 and had not "borrowed" money from WCUI on September 30, 2013.

10. It was further part of the scheme that defendant KANDALEPAS concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

11. On or about May 4, 2015, at Hoffman Estates, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANDREW J. KANDALEPAS,

defendant herein, for the purpose of executing the scheme to defraud, in connection with the purchase and sale of securities, willfully used and caused the use of a means and instrumentality of interstate commerce, namely, the internet to purchase 300 shares of Wellness Center USA, Inc. common stock, using Individual A's brokerage

6

account at Brokerage Firm A, an online brokerage firm;

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

_____
UNITED STATES ATTORNEY